[No. 24816. Department One. February 15, 1934.]

AMERICAN LAUNDRY MACHINERY COMPANY, *Respondent,* v. EASTLAKE LAUNDRY COMPANY, *Defendant,* ELMER N. COVEY *et al., Appellants.*[1]

*Pearson & Potts* and *Hoof & Winston,* for appellants.

*Padden & Moriarty,* for respondent.

STEINERT, J.—This is an appeal from a judgment of contempt, resulting in a fine of three hundred dollars being assessed against each of the persons charged.

The main action out of which the contempt proceeding arose was instituted by respondent to foreclose a

[1]Reported in 29 P. (2d) 696.

chattel mortgage upon certain laundry equipment and for the appointment of a receiver of the business of the mortgagor, the above-named defendant. The equipment mortgaged was only a part, though a substantial part, of the machinery, appliances and other equipment used by the defendant in the operation of an extensive laundry business in Seattle.

The original complaint was filed on May 18, 1931. Based thereon, a restraining order was issued prohibiting the defendant and its officers from

" . . . selling, disposing of, dissipating, transferring, or in any way depreciating the goodwill of the defendant corporation, its business, its routes, customers' lists, or route rights or laundry business, either directly or indirectly."

The restraining order was served upon the defendant corporation by delivery of a certified copy thereof to each of its two officers, Elmer N. Covey and W. T. Covey, respectively, on May 19 and May 20, 1933.

On May 24, 1933, an order was entered appointing a temporary receiver and directing him to take charge and control of the business of the defendant and operate it until the further order of the court, and to preserve the good-will of the business, its routes and customers' lists, so as to prevent their dissipation. The receiver promptly qualified, and demanded of the officers of the corporation, the appellants here, that the business be turned over to him. Although the final order of contempt recited that the receiver had demanded

". . . possession of the business of said corporation and of the assets and goodwill thereof from Elmer Covey, W. T. Covey and the Eastlake Laundry Company, and that they, and each of them, refused to turn over the assets of said corporation to said receiver, and especially the goodwill and business of said corporation,"

the record does not support such complete demand and refusal. It discloses, rather, that the receiver demanded possession and charge of the *business*, and that the appellants failed to comply with the demand. At any rate, at the instance of respondent, an order was issued by the court directing the defendant and the appellants to show cause why they should not be punished for contempt for disobedience of the court's former order, and upon a hearing, at which considerable evidence was taken, the court adjudged the appellants in contempt and imposed against each of them, separately, a fine of three hundred dollars.

At the contempt hearing, the following situation with reference to the Eastlake Laundry Company and its affairs was disclosed: Prior to October 1, 1932, Margaret J. Covey, mother of the appellants, had been the owner of certain real estate in Seattle and the laundry business conducted thereon under the name of Covey Laundry Service. On that day, she leased the premises, together with all the machinery, furniture, furnishings, equipment and all other personal property used in and about the business, together with the trucks and automobiles owned and employed in the business of the Covey Laundry Service, to defendant Eastlake Laundry Company for a period of five years, at a monthly rental of seven hundred dollars. The lease stipulated against the removal of any of the personal property, except the trucks, from the premises during the term of the lease, and for the surrender of the property to the lessor at the expiration of the term. The lease further provided that the plant and business should be kept in operation during the term of the lease, and that monthly statements of the condition of the business should be submitted to the lessor. It is apparent that the lease covered a going business and its included assets.

The Eastlake Laundry Company was not successful in its venture. It became delinquent in rent to the extent of $1,675.77. On April 21, 1933, and prior to the commencement of the present action, the lessor notified the lessee, by letter, that all delinquent rent would have to be paid by May 5, 1933, and that, in the event of the lessee's failure to do so, the lease would be forfeited. On May 20, 1933, *after* the commencement of the present action, and probably because of it, a notice to quit or pay rent within three days was served upon the lessee. In the meantime, as already stated, the foregoing restraining order had been served upon appellants.

Unable to collect her rent from the lessee, and faced with probable dissolution and loss of the business if it were taken over and conducted by a receiver, Mrs. Covey decided to repossess herself of the premises and the business thereon conducted. At the same time, and in order to keep the business going, she made an arrangement with her two sons, the appellants here, whereby they were to operate the business for her under the name of Covey Laundry Service. A new set of books was opened and the business segregated according to past and present ownership and operation.

When the receiver made his demand for possession, the arrangement between Mrs. Covey and appellants had already been effected and was in operation, and it was for that reason that surrender of the premises and business was not made to him.

The thought might naturally obtrude itself that the whole plan and arrangement between Mrs. Covey and the appellants was simply a scheme to thwart the processes of the law and the administration of the receivership. In a sense, it may be said that it was. But back of that is the question whether Mrs. Covey

had the right to do what she did. In a later proceeding, and upon due hearing, the court actually did forfeit the lease, thereby restoring the premises to Mrs. Covey, and also directed the receiver to return to her the trucks and the equipment covered by the lease, and of which the receiver had, in the meantime, possessed himself. So that the ultimate decision of the court as to Mrs. Covey's rights was a justification of her prior action with reference thereto.

Now, if Mrs. Covey was entitled to the return of her property at the time that she went into possession thereof, she had the right to contract with the appellants concerning its future operation by them for her. And further, the appellants had the right to contract with Mrs. Covey with reference to conducting the business which she had lawfully taken over. When, therefore, the receiver demanded possession of the premises, he was not entitled to it. He was entitled to take the machinery covered by plaintiff's chattel mortgage, but that he did not demand. He was also entitled to the defendant company's books, but these were not refused him. He may have been entitled to certain laundry supplies acquired by the defendant for its use and then on the premises, but these he did not want, except in connection with the active operation of the business. In short, the receiver desired to run the business upon the premises, and nothing less. This, however, he was not, under the circumstances, entitled to do.

The appellants were, therefore, not in contempt of court for simply failing to do what they had no right to do in the first instance—that is, to surrender to the receiver the property of their mother. Had the receiver made a demand for what he was actually entitled to, he would no doubt have gotten it; at any rate, there is no showing that he would not have. He did,

in fact, ultimately get everything that was not covered by the lease.

The rights of the respective parties having been presented, or at any rate suggested, to the court at the time of, and during, the contempt hearing, those rights should have been adjudicated, on proper issues and notice, before the matter of contempt was disposed of.

It is probably true that, in the contempt proceeding, the answers of the appellants to questions propounded were somewhat evasive and no doubt irritating. Their conduct upon the hearing is not to be commended. But they were not charged with, nor punished for, contempt in that respect. The whole question then was whether, in doing what they did with reference to the property, or in failing to do otherwise, the appellants were guilty of contempt. From what appears in the record before us, we are convinced that they were not.

The judgment is reversed.

BEALS, C. J., MILLARD, MAIN, and MITCHELL, JJ., concur.